**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NORTHEAST MEDICAL CENTER | ) | |
| 920 Church Street North | ) | |
| Concord, NC  28025 | ) | |
| | ) | |
| GRACE HOSPITAL | ) | |
| 2201 South Sterling Street | ) | |
| Morganton, NC  28655 | ) | |
| | ) | |
| ROPER HOSPITAL | ) | |
| 316 Calhoun Street | ) | |
| Charleston, SC   29401 | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| | ) | |
| KATHLEEN SEBELIUS, in her official | ) | |
| capacity as Secretary of the United States | ) | |
| Department of Health and Human Services, | ) | |
| 200 Independence Avenue, S.W., | ) | |
| Washington, D.C.  20201 | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| _____) | | |

**COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY**
**DECISIONS ON MEDICARE REIMBURSEMENT**

NOW COMES Plaintiffs, NORTHEAST MEDICAL CENTER, GRACE HOSPITAL,

and ROPER HOSPITAL, by and through their undersigned attorneys, and brings this

action against Defendant, Kathleen Sebelius, in her official capacity as Secretary of

Health and Human Services (hereinafter, the "Defendant"), and state as follows:

## JURISDICTION AND VENUE

1.      This is a civil action arising under Title XVIII of the Social Security Act, as amended (42 U.S.C. §§ 1395 *et seq.*) (hereinafter referred to as the "Medicare Act" or the "Act") to obtain judicial review of a final adverse agency decision of the Secretary of the United States Department of Health and Human Services.

2.      This Court has jurisdiction under 42 U.S.C. § 1395oo(f).

3.      Venue lies in this judicial district under 42 U.S.C. § 1395oo(f) and 28 U.S.C. § 1391.

## PARTIES

4.      Plaintiff,      NORTHEAST      MEDICAL      CENTER      (Plaintiff, "NORTHEAST") is located in Concord, North Carolina, and furnishes inpatient and outpatient hospital services to, *inter alia,* patients entitled to benefits under the Medicare Program.

5.      Plaintiff, NORTHEAST was at all relevant times a general acute care hospital that participated in the Medicare and Medi-Cal (Medicaid) program.

6.      Plaintiff, GRACE HOSPITAL (Plaintiff, "GRACE") is located in Morganton, North Carolina, and furnishes inpatient and outpatient hospital services to, *inter alia,* patients entitled to benefits under the Medicare Program.

7.      Plaintiff, GRACE was at all relevant times a general acute care hospital that participated in the Medicare and Medi-Cal (Medicaid) program.

8.    Plaintiff, ROPER HOSPITAL (Plaintiff, "ROPER"), is located in Charleston, North Carolina, and furnishes inpatient and outpatient hospital services to, *inter alia,* patients entitled to benefits under the Medicare Program.

9.    Plaintiff, ROPER was at all relevant times a general acute care hospital that participated in the Medicare and Medi-Cal (Medicaid) program.

10.    Plaintiffs, NORTHEAST, GRACE and ROPER shall also be referred to, for purposes of the instant complaint, as "Plaintiff, Providers" or "Providers".

11.    Defendant, Kathleen Sebelius is the Secretary of Health and Human Services ("HHS"), the federal department that contains the Centers for Medicare & Medicaid Services ("CMS"). CMS is the agency within HHS that is responsible for the administration of the Medicare program.

## MEDICARE PAYMENT UNDER THE INPAITENT PROSPECTIVE PAYMENT SYSTEM ("IPPS")

12.    The Medicare Program establishes a system of health insurance for the aged, disabled, and individuals afflicted with end-stage renal disease.  Pursuant to 42 U.S.C. § 1395cc, the Provider entered into written agreements with Defendant to provide hospital services to eligible individuals.

13.    Short term acute care hospitals, such as Plaintiff, Provider are paid under the inpatient prospective payment system ("IPPS"), as provided for in 42 U.S.C. § 1395ww(d).  Calculating prospective-payment rates begins with determining the "federal rate," a standard nationwide cost rate based on the average operating costs of inpatient hospital services, which is also known as the "standardized amount."  *See* 42 U.S.C. § 1395ww(d)(2)(A)-(B); 49 *Fed. Reg.* 234, 251 (1984).  To account for the fact that labor

costs vary across the country, CMS determines the proportion of the standardized amount attributable to wages and wage-related costs and then multiplies that labor-related proportion by a "wage index" that reflects the relation between the local average of hospital wages and the national average of hospital wages. *See* 42 U.S.C. § 1395ww(d)(2)(H), (d)(3)(E). The final variable is an additional weighting factor that reflects the disparate hospital resources required to treat major and minor illnesses. Medicare patients are classified into different groups based on their diagnoses, and each of these "diagnosis-related groups" (DRGs) is assigned a particular "weight" representing the relationship between the cost of treating patients within that group and the average cost of treating all Medicare patients. *See* 42 U.S.C. § 1395ww(d)(4).

14.     General hospital such as Plaintiff, Provider are paid for inpatient care rendered to Medicare recipients based on the prospectively determined per case DRG rates as described above.

15.     CMS does not calculate the standardized amount from scratch each year. Instead, following Congress's directive, it calculated the standardized amount for a base year and has since carried that figure forward, updating it annually for inflation. *See,* 42 U.S.C. § 1395ww(b)(3)(B)(i), (d)(2), (d)(3)(A)(iv)II); 42 C.F.R. § 412.64(c)-(d). Unlike the standardized amount, however, the wage indexes are calculated by CMS anew each year instead of being carried forward from one year to the next.

16.     Payment to providers of services is commonly carried out by Medicare fiscal intermediaries which act as agents of the Secretary pursuant to contracts with her. An intermediary is assigned to each hospital that participates in Medicare. Fiscal

intermediaries make periodic interim payments to providers that are subject to subsequent adjustments for overpayments or underpayments.  42 U.S.C. § 1395h.

17.     At the close of the fiscal year ("FY"), a hospital must submit a cost report showing both the cost incurred by it during the fiscal year and the appropriate portion of those costs to be allocated to Medicare.  42 C.F.R. §§ 413.24, 413.50.  The hospital's intermediary is then required to analyze and audit the cost report and issue a Notice of Program Reimbursement ("NPR"), which informs the hospital of the final determination of its Medicare reimbursement for the cost reporting period in compliance with the law.

### THE RURAL FLOOR BUDGET NEUTRALITY ADJUSTMENT

18.     In 1997, Congress determined that "[a]n anomaly that exists with the way area wage indexes are applied has resulted in some urban hospitals being paid less than the average rural hospital in their states."  H.R. Rep. No. 105-149, at 1305 (1997).  To correct this problem, Congress provided in the Balanced Budget Act of 1997 ("BBA") that the wage index assigned to a hospital in an urban area must be at least as great as the wage index assigned to rural hospitals within the same state.  Pub. L. No. 105-33, § 4410(a), 111 Stat. 251, 402 (reprinted at 42 U.S.C. § 1395ww note) ("[T]he area wage index applicable under [42 U.S.C. § 1395ww(d)(3)(E)] to any hospital which is not located in a rural area… may not be less than the area wage index applicable under such section to hospitals located in rural areas in the State in which the hospital is located.").  This provision is commonly referred to as the "rural floor."

19.     Congress mandated that the rural floor be "budget neutral." It required the Secretary to implement the rural floor in a manner that would have no effect on the annual total of Medicare payments made to all hospitals throughout the country for

inpatient services. Congress accomplished this through BBA section 4410(b), which provides: "The Secretary shall adjust the area wage index … in a manner which assures that … aggregate payments… in a fiscal year for the operating costs of inpatient hospital services are not greater or less than those which would have made in the year if [the rural floor] did not apply." The adjustment made by CMS to implement the rural floor in a budget neutral manner is known by some as the rural floor budget neutrality adjustment ("RFBNA").

20.     Prior to Federal Fiscal Year (FY) 2012, CMS made an adjustment to the standardized amount, rather than the wage index, for the purpose of arriving at the RFBNA. Beginning in FY 2012, CMS has made an adjustment to area wage indices for purposes of arriving at the RFBNA.

21.     Prior to FY 2012, CMS erroneously calculated the RFBNA. Prior to FY 2012, CMS compared projected aggregate payments for the coming fiscal year with the rural floor applied with the aggregate payments that would have been made in the current fiscal year without the rural floor. "CMS then reduced the standardized amount to account for the full difference between these two figures, despite the fact that the standardized amount being carried over already included reductions from prior years' rural floor budget-neutrality adjustments. That is, in calculating the RFBNA adjustment for any given year prior to FY 2012, CMS compared (1) estimated payments resulting from the application of the wage data with the rural floor applied, to (2) estimated payments resulting from the application of the prior year's wage data without the rural floor applied. Although the published description of the Secretary's simulation model had always stated that the budget neutrality adjustment is calculated based on the actual

"wage indexes," *see,* e.g., 71 *Fed. Reg.* at 48147, the model did not actually work in that manner. For example, the model used to calculate the budget neutrality adjustment for 2007 did not use the actual "wage indexes" for the prior year (2006) as stated in the Federal Register. *Id.* If the Secretary had used the actual "wage indexes" for 2006 in calculating the budget neutrality adjustment for 2007, those indexes would have reflected the application of the rural floor. The only "wage indexes" listed in each year's PPS rule reflect the wage indexes after application of the rural floor. Because CMS calculated the entire payment effect of the rural floor but applied the corresponding adjustment to a carried-over figure that already incorporated previous years' rural floor budge-neutrality adjustments, it duplicated prior adjustments in a manner that progressively reduced aggregate payments to hospitals, including the Provider in this case, over time.

## THE CAPE COD DECISION

22.     In *Cape Cod Hospital v. Sebelius,* 630 F.3d 203 (D.C. Cir. 2011), a group of hospitals challenged the FY 2007 and FY 2008 IPPS rules as arbitrary and capricious because CMS did not correct the effects of its erroneous calculation of the FRBNA for FYs prior to FY 2008, but instead made a one-time adjustment as part of the FY 2008 final rule, which removed only the effect of the 2007 rural-floor budget-neutrality to the standardized amount, and left in place all of the erroneous RFBNA adjustments made before 2007.

23.     The United States Court of Appeals for the District of Columbia Circuit held in *Cape Cod* that the Medicare statute neither requires nor authorizes CMS to carry over from year to year erroneously calculated RFBNAs. It vacated the challenged

portions of the FYs 2007 and 2008 IPPS final rules and remanded the matter to the Secretary for further proceedings.

## THE MEDICARE PROVIDER REIMBURSEMENT APPEALS PROCESS

24.     Section 1878(a) of the Social Security Act, 42 U.S.C. 1395oo(a) (also referred herein as the "Provider Appeals Right Statute"), provides that, under certain circumstances, a provider of services may obtain a hearing before the Provider Reimbursement Review Board (hereinafter, the "PRRB", or the "Board") if it has timely filed a cost report and received a final determination (Notice of Program Reimbursement or "NPR") from its fiscal intermediary with which it is dissatisfied or the amount in controversy is $10,000 or more, and the provider files a request for a hearing within 180 days after notice of such determination was received.

25.     The Provider Rights Statute provides that a provider has the right to judicial review of any final decision of the PRRB, or of any reversal, affirmance, or modification by the Secretary (whose decision making authority has been delegated to the CMS Administrator), by a civil action commenced within 60 days of the date on which notice of any final decision by the PRRB or of any reversal, affirmance, or modification by the Secretary is received.  42 U.S.C. § 1395oo(f).  *See also* 42 C.F.R. § 405.1877.

## PROCEEDINGS BELOW

26.     As relevant to this Complaint, Plaintiff, Providers fiscal intermediary (MAC) issued its NPR for which each Provider appealed within the requisite 180-day period.  The specific Cost Reporting periods appealed by Plaintiff, Providers, dates of issuance of original NPR's and revised NPR's ("RNPR") and appeals are as follows:

| Provider | Cost Reporting Period | Date Issuance of NPR | Date Issuance Revised NPR |
|----------|----------------------|----------------------|---------------------------|
| Northeast | FYE  09/30/06 | 02/17/10 | 03/06/13 |
| Grace | FYE  12/31/06 | 02/17/10 | 03/06/13 |
| Roper | FYE  12/31/06 | 06/19/09 | 03/06/13 |

The NPR, RNPR and Appeal for Provider, Northeast is attached hereto as **Exhibit A.**

The NPR, RNPR and Appeal for Provider, Grace is attached hereto as **Exhibit B.**  The

NPR, RNPR and Appeal for Provider, Roper is attached hereto as **Exhibit C.**

27.     In each Appeal, Plaintiff, Provider sought to recover amounts due and

owing from the Secretary as a result of the Secretary's erroneous RFBNA computation.

As a result of the deficiencies in the RFBNA computation, each Provider's standardized

payment was understated by a factor of *at least* 1.050%.  76 Fed. Reg. 51476, 51788

(August 18, 2011.).

28.     In each Appeal, Plaintiff Provider also asserted that the SSI percentage

computed by the intermediary, and reflected in each RNPR, was incorrect because the

Secretary failed to include in each revised computation all of the SSI entitled individuals

who should have been included in the SSI fraction.

29.     In each Board determination to the Provider's Appeal, the PRRB found

that it did not have jurisdiction to hear the Provider's appeal. A brief description of each

such determination is set forth, below:

NORTHEAST
Date of Determination- 03/07/14
Revised NPR shows that DSH was adjusted in order to adjust SSI% and to include Labor
and Delivery Days. There was no specific adjustments made to RFBNA;  therefore, the
Board finds that it does not have jurisdiction over this Provider's
appeal as it lacks the specificity requirements for a revised NPR.  As RFBNA was the
only issue in the appeal, case ….. is dismissed.

GRACE
Date of Determination- 03/07/14
DSH was adjusted in order to adjust SSI%. Because the RFBNA was not specifically adjusted in the revised NPR, the Board finds that it does not have jurisdiction over this Provider's appeal as it lacks the specificity requirements for a revised NPR.  As RFBNA was the only issue in the appeal, case ….. is dismissed.

ROPER
Date of Determination- 03/07/14
Revised NPR shows that the SSI% used in calculating DSH was adjusted.  There was no adjustment made to the RFBNA, therefore the Board does not have jurisdiction over this Provider's appeal. Case…..is hereby closed.

30.     Plaintiff, Providers contend that it is mandatory that the Board take jurisdiction over unclaimed costs because they have met the jurisdictional requirements of 42 U.S.C. §1395oo and 42 C.F.R. §1396(a) because it is dissatisfied with the amount of reimbursement. The Board can take jurisdiction over the issue under the provisions of 42 U.S.C. §1395oo(d) which sets forth the Board ability, once jurisdiction has been established, to affirm, modify or reverse an intermediary determination, even though such matters were not considered by the Intermediary.

31.     This action challenges the Board's dismissal of appeals alleging that the Secretary failed to include all patients entitled to both Medicare and SSI in calculating the Providers' SSI percentage.  Providers also challenge the Secretary's failure to provide such data as required to enable the Providers to determine whether its SSI percentage should be computed on the basis of its cost reporting period or the federal fiscal year, and challenges the Secretary's refusal to correct her acknowledged failure to calculate the RFBNA in a budget neutral manner as required by statute for the period under appeal, therefore leaving the DRG amount, where applicable, understated and therefore leaving the Medicare DSH understated as well.  Though it is undisputed that the Secretary's error in computing the RFBNA was contrary to statute and led to underpayments to hospitals,

including the Providers in this suit, from 1999-2012, the Secretary has only corrected this error *prospectively.*

32.     This Complaint is filed within 60 days of receipt of each of the aforementioned and attached PRRB's decision.

## COUNT I – Mandamus - RFBNA

33.     Plaintiff, Providers hereby incorporate by reference paragraphs 1-32.

34.     As a matter of law, the Secretary was possessed of a clearly nondiscretionary duty to compute the RFBNA in a budget neutral manner.  The statute does not leave any discretion to the Secretary in this regard.  See BBA § 4410(a), 42 U.S.C. § 1395 note (*"The Secretary [s]hall adjust the area wage index [i]n a manner which assures that the aggregate payments made under section 1886(d) of the Social Security Act in a fiscal year [a]re not greater or less than those which would have been made in the year if this section did not apply."*)(emphasis added). See, also *Cape Code Hosp. v. Sebelius,* 630 F.3d 203, 213-215 (D.C. Cir. 2011).

35.     As a matter of law, Plaintiff, Providers have a right to receive the amount of payments required under the Medicare statute. *Georgetown University Hosp. v. Bowen,* 862 F.2d 323 (D.C. Cir. 1988); *Monmouth Med. Ctr. v. Thompson,* 257 F.3d 807, 814-15 (D.C. Cir. 2001); *In re Medicare Reimbursement Litig.,* 414 F.3d 7 (D.C. Cir. 2005).

36.     As shown in *Cape Cod,* the Secretary's clear and unambiguous legal obligation under Pub. L. No. 105-33, § 4410(a) was breached by the Secretary's application of a full, cumulative RFBNA adjustment to rates that had already been partially reduced for prior year RFBNA adjustments.

37.     The relief requested herein is not precluded by the prohibition on reopening more than three (3) years after issuance of the NPR or RNPR.  42 C.F.R. §405.1885(b)(2)(i).  The Secretary's *statutory* obligation to provide for a budget neutral rural adjustment cannot be removed by virtue of a *regulation.* BBA § 4410(a), 42 U.S.C. § 1395ww note.

38.     Plaintiff, Providers have exhausted all other available remedies.

**WHEREFORE,** as to Count I, Plaintiff, Providers request an Order:

(a)     Issuing a writ of mandamus pursuant to 28 U.S.C. § 1361 and 5 U.S.C. § 706(1), directing the Secretary to re-compute the amounts owing to Plaintiff, Providers using the correct budget neutrality adjustment factors, and to promptly pay such amounts as recomputed to Plaintiff, Providers.

(b)     For Plaintiff, Providers' costs and reasonable attorney's fees, and for such other and further relief as the court deems just and appropriate.

## COUNT II – RNPR Adjusted RFBNA

39.     Plaintiff, Providers hereby incorporate by reference paragraphs 1-38.

40.     The PRRB dismissed each of the RFBNA appeals of Plaintiff, Providers for lack of jurisdiction on the basis that the RNPR did not affect the rural neutrality budget adjustment.   However, the RNPR revised the SSI percentage and the corresponding DSH payments to Plaintiff, Providers.  This in turn impacted the total RFBNA adjustment.  The PRRB's determination that the RNPR did not adjust the RFBNA was arbitrary and capricious.

41.     Under the Administrative Procedures Act ("APA"), this Court may set aside agency action, findings, and conclusions which are "*arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.*" 5 U.S.C. § 706(2)(A).

**WHEREFORE,** as to Count II, Plaintiff, Providers request an Order:

(a)     Holding that the PRRB had jurisdiction pursuant to 42 U.S.C. § 1395oo(d) over the RFBNA issue;

(b)     Remanding to the PRRB with instructions to take jurisdiction over Plaintiff, Provider's RFBNA appeal and to properly compute each amount owing to each Plaintiff, Provider using the correct budget neutrality adjustment factors, and;

(c)     For Plaintiff, Providers' costs and reasonable attorney's fees, and for such other and further relief as the court deems just and appropriate.

## COUNT III- RFBNA- Invalidity of Regulations

42.     Plaintiff, Providers hereby incorporate by reference paragraphs 1-41.

43.     Pursuant to 42 U.S.C. § 1395oo(d), the PRRB has, "*the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report and to make any other revisions on matters covered by such cost report…even though such matters were not considered by the intermediary in making such a final determination.*[Emphasis added.]

44.     Once jurisdiction under 42 U.S.C. § 1395oo(a) is properly invoked, the PRRB may exercise its jurisdiction over any other matter covered by the cost report, even if the dissatisfaction requirement has not been satisfied as to the particular matter.  See, *UMDNJ University Hosp. v. Leavitt,* 539 F. Supp. 2nd 70 (D.D.C. 2008); *Loma Linda*

*University Medical Center v. Leavitt,* 492 F.3d 1065 (9th Cir. 2007); *Maine General Medical Center v. Shalala,* 205 F.3d 493 (1st Cir. 2000).

45.     Plaintiff, Providers properly invoked the jurisdiction of the PRRB under 42 U.S.C. § 1395oo(a) with respect to the Secretary's failure to compute the correct SSI percentages in each revised NPR identified, above.

46.     Once the Board obtained jurisdiction over this issue pursuant to 42 U.S.C. § 1395oo(a), its jurisdiction over the RFBNA issue was automatic pursuant to 42 U.S.C. § 1395oo(d).   The specific issue of whether the RFBNA adjustment was properly computed would clearly impact the total amount of program reimbursement, and is therefore a matter covered by the cost report.  *Bethesda Hosp. Ass'n v. Bowen,* 485 U.S. 399, 406 (1988).

47.     The Secretary's regulations purport to limit the Board's jurisdiction on an appeal from a RNPR to only those matters specifically adjusted by the RNPR.  42 C.F.R. § 405.1889.  These regulations are invalid because they are inconsistent with the Board's organic statute at 42 U.S.C. § 1395oo(d).  These regulations were also not promulgated in accordance with the notice and comment rulemaking provisions contained in the APA and the Medicare Act.  See, U.S.C. § 553(b)-(c), 42 U.S.C. § 1395hh.  The application of these regulations to cost reporting periods prior to their adoption is also impermissibly retroactive.  *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208 (1988); *Northeast Hosp. Corp. v. Sebelius,* 657 F.3d 1, 17 (D.C. Cir. 2011).

48.     Under the APA, this Court may set aside agency action, findings, and conclusions which are, "*arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."*  5 U.S.C. § 706(2)(A).  The PRRB's denial of jurisdiction over

the RFBNA on the basis of the Secretary's invalid regulations was in violation of the Medicare Act and not in accordance with law.

WHEREFORE, as to Count III, Plaintiff, Providers request an Order;

(a)     Holding that the PRRB had jurisdiction pursuant to 42 U.S.C. § 1395oo(d) over the RFBNA issue;

(b)     Remanding to the PRRB with instructions to properly compute the amounts owing to Plaintiff, Providers using the correct budget neutrality adjustment factors, and;

(c)     For Plaintiff, Providers' costs and reasonable attorney's fees, and for such other and further relief as the court deems just and appropriate.

Date: May 9, 2014                           Respectfully submitted,

                                            /s/  *Alan J. Sedley*
                                            Alan J. Sedley Bar No. OH0017
                                            SEDLEY HEALTH LAW FIRM
                                            21300 Victory Boulevard  Suite 420
                                            Woodland Hills, CA  91367
                                            Telephone:  818.601.0098
                                            Alan.sedleylaw@gmail.com

                                            *Attorneys for Plaintiff, Providers*